Damp vs. Town of Dane.

## DAMP VS. TOWN OF DANE.

*Highway, laying out by county board, jurisdiction.* *Estoppel.* *Evidence.* *Waiver.*

29 419
80 597
29 419
81 393
29 419
82 140
29 419
86 150

1. The provision of sec. 59, ch. 19, R. S. 1858, which makes the order laying out, altering or discontinuing a highway *prima facie* evidence of the regularity of the prior proceedings, is applicable to an order of that kind *made by the county board of supervisors*, under ch. 133, Laws of 1863, as amended by sec. 2, ch. 51, Laws of 1868.

2. A "resident freeholder," within the meaning of those statutes, is a person who resides in the particular town in question and owns a freehold interest in lands *situate therein*.

3. The petition of fifteen resident freeholders of each town affected by the order, was absolutely necessary to give the county board of supervisors *jurisdiction* to make the order laying out the road.

4. In an action against one of the towns between which the road was ordered to be laid out, to recover damages for plaintiff's land condemned for the use of the road, where it is shown that only *fourteen* of the petitioners for such order were resident freeholders of said town, the complaint must be dismissed, in case defendant can be heard to make the objection.

5. Where an attempt to condemn private property for public use is made, but fails, the county or town which would have been liable to pay therefor if the proceeding had been valid, is not estopped to deny the taking.

6. A *town* which would be chargeable with the damages for land taken for a highway under an order of the *county* board, may object that the order was invalid because of a failure of the board to acquire jurisdiction.

7. If a tribunal has not jurisdiction of the subject matter, its proceedings are absolutely void in the broadest sense of the term. As a general rule, no act or consent of the parties can, in such a case, confer jurisdiction.

8. Objection to the jurisdiction *of the person* may be waived by act of the party; want of jurisdiction *of the subject matter* is never thus waived.

9. Where proceedings are had before a J. P. under the statutes, to have damages assessed by a jury for land condemned for a highway under an order of the county board, if such order is regular on its face, the J. P. cannot inquire into the regularity of the prior proceedings on which it was based.

10. While, therefore, the participation of the defendant town in the selection of a jury and in the other proceedings before the justice, without objection, would be a waiver of any irregularity *in those proceedings*, its omission to object before the justice that the order for laying out the highway was invalid because not based upon any sufficient petition, was *not* a waiver of that objection, and does not estop it from denying that plaintiff's land was ever taken.

APPEAL from the Circuit Court for *Dane* County.

Action against the town of Dane to recover the damages awarded to the plaintiff for the laying out of a highway through his land in said town. On a petition purporting to be signed by sixteen resident freeholders of said town of Dane, and fifteen or more of such freeholders of the town of Vienna, the county board of supervisors of the county of Dane, on the 12th day of March, 1869, met pursuant to a notice for that purpose, and decided to lay out, and, on the 13th day of March, 1869, made an order laying out a public highway on or near the line between those towns, and running through the plaintiff's land, and awarded him damages therefor, to be paid by said town of Dane. He appealed from such award, two residents of Vienna, through whose land the same road was laid, joining with him, and making both towns appellees. The chairman of the board of supervisors of the town of Dane, appeared and participated in striking the jury which was impanneled on such appeal; and such jury, after a hearing, awarded the plain-

tiff a much larger amount of damages, which award he sought to recover in this action.

The pleadings and facts appearing on the trial are stated in the opinion of the court.

From a judgment in favor of the plaintiff for the amount of such award, with interest, the town appeals.

*Wm. F. Vilas*, for appellant, contended that until mutual rights have become vested, the public officers may discontinue proceedings for establishing a highway, and not pay the damages assessed (*In re Dover Street*, 1 Cow., 74; *In re Canal Street*, 11 Wend., 154; *The People v. Brooklyn*, 1 id., 318); and until the road is opened, nothing is taken from the land owner for which he should be compensated, and until then, or at least until such owner obtains a judgment for his damages, the authorities may recede, as they did in this case. *Evans v. James*, 4 Wis., 408; *Warren v. Bunnell*, 11 Vermont, 600; *Patchen v. Morrison*, 3 id., 590; *Sangamon Co. v. Brown*, 13 Ill., 208; *Stiles v. Middlesex*, 8 Vt., 436. 2. The plaintiff should have been non-suited for want of proof of the authority of the county board, its jurisdiction being special and limited and every intendment being against it. 4 Chand., 56; 3 Wis., 157; *Rœhrborn v. Schmidt*, 16 Wis., 519; *Emerson v. Reading*, 14 Vt., 279; *People v. Commissioners*, etc., 27 Barb., 94; *People v. Hynds*, 30 N. Y., 470; *People v. Eggleston*, 13 How., 123; 21 Barb., 578; 5 Indiana, 459; 9 id., 103; 12 id., 306. The county board had no power to act unless the petition was signed by thirty resident freeholders, and not less than fifteen from each town. *Williams v. Holmes*, 2 Wis., 129; *Van Vliet v. Wilson*, 17 id., 687; *Hewes v. Andover*, 16 Vt., 510; *Town of Plainfield v. Packer*, 11 Conn., 576; *Waterbury v. Darien*, 8 id., 161; *Treat v. Middleton*, id., 243. The order was not *prima facie* proof thereof, section 59, ch. 19, R. S., not applying to the county board. The petition was shown not to have been signed by fifteen resident freeholders from the town of Dane, several of the signers not being freeholders. To be qualified under the

statute, a petitioner must not only reside in, but own taxable real estate in the town.    3. The order of the county board awarding damages is not in conformity to the statute.    It is doubtful whether chap. 41, Laws of 1866, authorizes the county board to make any award, or whether the damages are to be determined between the town boards and the land owners. The award should be in a separate order from that laying out the road, and should be to the owner, not to the land; and it should show an attempt to agree with the owner.    *Dyckman v. Mayor*, etc.; 5 N. Y., 434; *Reitenbaugh v. Chester Valley R. R. Co.*, 21 Pa. St., 100; *Gilbert v. Col. Turnpike Co.*, 3 Johns. Ca., 107.    4. The award on which this suit is brought, is void because both towns were joined as appellees.    5. The town is not estopped by the appearance of its chairman at the striking of the jury.    *People v. Osborn*, 20 Wend., 186; *People v. Commissioners*, 27 Barb., 94.

*Smith & Lamb* for respondent:

The order laying out the highway was *prima facie* evidence that all prior proceedings were regular, and that the petitioners were freeholders.    *Neis v. Franzen*, 18 Wis. 537; *Austin v. Allen*, 6 id., 134; *Hampstead's Petition*, 19 N. H., 343.    The functionaries acting in establishing this highway, were each and all, in a proper sense, representatives of the sovereign power of the state, exercising the right of eminent domain, and the town is in no better position to question the validity of the proceedings, than it would have been had everything been done by itself or its own officers.    *The Auditor v. Crise*, 20 Ark., 540; *Higgins v. City of Chicago*, 18 Ill., 276; *Peoria County v. Harvey*, id., 364; Secs. 1 and 2, ch. 286, Laws of 1861.    2. The towns required to pay the damages assessed cannot be heard to object to irregularities or errors.    By not objecting before the county board to the legal capacity of the petitioners, or to other defects or irregularities, the town ought to be held to have waived them.    *Road in Allen Township*, 18 Pa., 463.    3. By appearing at and participating in the striking of the jury, the town waived

all objections to previous proceedings. *Flagg v. Worcester*, 8 Cush., 69 ; *State v. Richmond*, 26 N. H., 242 ; *Petition of Guilford*, 5 Foster, 124 ; *Steel's Petition*, 44 N. H., 220 ; *Kennet's Petition*, 24 id., 139 ; *Weaver's Road*, 45 Pa. St., 405 ; Opinion of PAINE, J., in *Burns v. Milw. & Miss. R. R. Co.*, 9 Wis., 450 ; *Tenney v. Lenz*, 16 id., 566 ; *Smith v. City of Milwaukee*, 18 id., 63 ; *Woodruff v. Sanders*, id., 161 ; *Town of Carmel v. Judges, &c.*, 7 Wend., 264 ; 18 Ill., 276, 364. 4. The proceedings for determining the damages and the appeal were regular. The statute conferring power upon the county board to lay roads, makes the provisions of the R. S. on that subject, a part of it, as much as if they were incorporated in it. Potter's Dwarris, 190, &c. 5.The fact that the road had been opened would make no difference with the plaintiff's right to recover. *Van Vliet v. Wilson*, 17 Wis., 678. The right to damages became vested the moment the public acquired the right to use the land for a highway, and could not be taken away by a subsequent discontinuance of the road. The damages were given for the *easement* or right to use the land, so long as the public choose, whether longer or shorter, not for the land itself. *Clough v. Unity*, 18 N. H., 75 ; *Willey v. Epping*, 16 id., 58 ; *Hampden v. Coffin*, 4 id., 517 ; *People v. Westchester*, 4 Barb., 64–75 ; *Harrington v. Berkshire*, 22 *Pick.*, 263 ; *Philadelphia v. Dyer*, 41 Pa. St., 462. The repeal by the county board of its former order could not affect the right of the plaintiff here. *Fletcher v. Peck*, 6 Cranch, 87 ; *People v. Platt*, 17 Johns., 195 ; Dwarris on Statutes ; 4 Barb., 64.

LYON, J. On the 13th day of March, 1869, the board of supervisors of the county of Dane made an order laying out a public highway in said county, on and near the line between the towns of Dane and Vienna, and upon and over certain lands in the former town belonging to the plaintiff, and awarded the plaintiff damages therefor in the sum of fifty-two dollars. The board also decided and ordered that the town of Dane should pay such damages.

The complaint sets out all of the proceedings pertaining to the laying out of such highway, and if such proceedings are correctly stated therein, it shows that the highway was laid out in strict accordance with the requirements of the statutes in that behalf.

The plaintiff being dissatisfied with the sum awarded him for his damages, applied to a justice of the peace of an adjoining town, within the time prescribed therefor by law, for a jury to assess and appraise such damages, due notice of which application was served upon the town of Dane; and such proceedings were thereupon had, that a jury was selected, summoned and sworn, and said jury assessed and appraised the plaintiff's damages, by reason of the laying out of such highway on his lands, at four hundred dollars. The award of the jury was filed in due time in the offices of the clerk of the board of supervisors and of the town clerk of the town of Dane. Two other persons, to whom damages were awarded by reason of the laying of the same highway, to be paid by the town of Vienna, joined with the plaintiff in the application for such jury, and the same jury also assessed their damages. All of the proceedings upon such re-appraisal of damages seem to have been conducted in accordance with the statutes on that subject.

At the time appointed in the notice of the application for a jury, Mr. Steele, who was then the chairman of the board of supervisors of the town of Dane, appeared before the justice named in such notice, and struck five names from the jury list, containing fifteen names, which had been made by such justice. Mr. Steele also suggested to the justice the day upon which the precept for the jury should be made returnable, and the justice accordingly made it returnable on such day. It does not appear that he made any objection on that occasion to the validity or regularity of any of the proceedings relating to the laying out of the highway, or the assessment of the damages caused thereby.

The plaintiff presented his claim for the damages awarded to him by the jury and the costs taxed by the justice, to the town board of the town of Dane, and demanded that said board should audit the same ; but the board refused to audit, or pay, or to provide for the payment of such claim or any portion of it ; and thereupon he brought this action to recover the same.

The original answer of the defendant admits that plaintiff is the owner of the land described in the complaint ; and also admits the making, filing and recording of the order of March 13, 1869, purporting to lay out the highway in question, the presentment of the plaintiff's claim for audit, and the refusal of the town board to audit the same, as stated in the complaint. Except as so admitted, the answer denies each and every allegation of the complaint.

The defendant afterwards, by leave of court, filed a supplemental answer, alleging in substance that, after the service of the original answer, to wit : on the 7th day of February, 1871, the board of supervisors of Dane county, upon due and regular proceedings, made an order wholly vacating and discontinuing the said highway, and vacating, reversing and setting aside such order of March 13th, 1869 ; and alleging further that such highway " was never opened or worked, nor was any land ever taken from the plaintiff, nor any fences removed or any injury to his said property done, by reason of said order of the county board of supervisors dated March 13th, 1869, or of any of the matters in the complaint alleged."

The plaintiff demurred to such supplemental answer "for insufficiency, in so far as it is a supplemental answer, in not stating facts sufficient to constitute a defense." The circuit court sustained the demurrer.

The action was tried by the court (a jury having been waived), and the plaintiff recovered judgment for the amount of his claim, with interest from the date of the assessment by the jury, and costs of suit.

From such judgment the defendant has appealed to this court.

The petition for the highway, upon which the county board of supervisors acted in making the order of March 13th, 1869, purports to be signed by sixteen resident freeholders of the town of Dane. The plaintiff, in the first instance, did not offer the petition or any evidence of the fact that the petitioners were what they purport to be. It is claimed on behalf of the defendant, that there is no presumption that these petitioners were resident freeholders of that town, and that the burden was upon the plaintiff to prove that they were such. But we think otherwise. Sec. 59 of chap. 19 of the Revised Statutes provides as follows: "The order laying out, altering or discontinuing any highway, or a copy of the record thereof duly certified by the town clerk, shall be received in all courts and places as competent evidence of the facts therein contained, and shall be *prima facie* evidence of the regularity of all the proceedings prior to the making of such order." It is true that the chapter in which this section is found does not confer upon the county board of supervisors power to lay out and establish highways. That power is conferred by the Laws of 1863, chap. 133, as amended by the Laws of 1866, chap. 41, and the Laws of 1868, chap. 51. But chap. 19 of the Revised Statutes conferred upon the supervisors of two adjoining towns power to lay out a highway on the line between such towns. (Sec. 67.) Had the highway in question been laid out by the supervisors of the towns of Dane and Vienna under this law, there can be no doubt but that the order laying out the same would have been *prima facie* evidence that the petitioners were resident freeholders of the towns of Dane and Vienna respectively. More than that, it would have been *prima facie* evidence that a petition for the highway was duly presented to the supervisors, as well as that it was signed by the requisite number of resident freeholders of each town. Such is the plain provision of sec. 59, above quoted. There can be no good reason given why the statute should not be held to apply to an order laying out a highway of the same character, by other officers, although

the power to lay out the same was conferred upon such other officers by a subsequent law.

When, therefore, the order of March 13th, 1869, was read in evidence, it proved *prima facie* that fifteen resident freeholders from each of the towns of Dane and Vienna had duly petitioned the county board of supervisors to lay out and establish such highway. The defense was really conducted upon this theory, and all of the testimony introduced on behalf of the defendant related to the qualifications of the petitioners from the town of Dane, or a portion of them, for the purpose of showing that the petition was not signed by the requisite number of qualified persons from that town.

Before proceeding to examine the testimony on this point, it is important to ascertain the qualifications of a petitioner for this highway. The power to lay out such highway could only be exercised " upon petition of not less than thirty resident freeholders, and not less than fifteen from each town through or into which, or along and near to the line of which, it is proposed to lay out such highway," etc. Laws of 1863, chap. 133, sec. 2, as amended by Laws of 1868, chap. 51, sec. 2. That is to say, before the board could lawfully lay out the highway it was essential that the same should be petitioned for by fifteen resident freeholders from the town of Dane, and a like number, having the same qualifications, from the town of Vienna.

But some controversy has arisen as to what constitutes a " resident freeholder " of the town of Dane. Obviously, a person within that description must be, 1st. A resident of that town ; and 2d. He must own a freehold interest in lands *situated therein*. If the theory of this statute is that a freeholder is the better able to judge of the necessity for laying out a proposed highway than a person who is not a freeholder — that, in some mysterious manner, the fortunate owner of real estate, is, by reason of such ownership, elevated to an intellectual plane which is entirely unattainable by the less fortunate land-less individual — it might well be held to be quite immaterial

whether the land of the resident petitioner was located in the town where he resided or in some other town, state or county. Of course the statute is based on no such preposterous theory. But the principle of the law and its evident intent is, that the highway shall not be laid out without the advice and sanction of the requisite number of residents of the proper town, who, by reason of their property interests in such town, and their liability to be taxed to pay the resulting damages, would not be likely to petition for the highway unless it was needed by the public. The legislature has seen fit to require that such property interest must be freehold estate; and unless it is held that such estate must be in lands situated within the town where the petitioners reside, an important object sought to be attained by the statute would be defeated.

It may be further remarked that the provisions of the law concerning the laying out, etc., of highways by the supervisors of towns are substantially the same in respect to the qualifications of petitioners therefor. R. S., chap. 19, sec. 53. Yet it is believed to have always been the universal understanding of the people, bar and bench of the state, that a person is not a qualified petitioner under the law unless he holds a freehold interest in lands situated in the town wherein he resides.

We now come to the consideration of the evidence in regard to the qualifications of the petitioners for the highway in question. It has been stated that the petition purports to be signed by sixteen resident freeholders of the town of Dane. The evidence is quite satisfactory that they all resided in that town when they signed the petition. But the evidence is conclusive that neither C. A. Martin nor S. H. Benjamin, two of the sixteen petitioners, then had a freehold estate in any lands situated in said town. There were, therefore, but fourteen qualified petitioners for the highway from that town. It is well settled that the petition of fifteen resident freeholders of the town of Dane was essential to give the county board of supervisors power to lay out the highway. Without such petition the board

had no jurisdiction whatever in the premises. A deficiency of but one in the required number of qualified petitioners, is as fatal to the validity of the proceedings, as would be the absence of any petition. The order of March 13th, 1869, is therefore null and void, because the board of supervisors had no legal power or authority to make it, and no property of the plaintiff or of any other person was thereby taken for public use.

From the views above expressed it follows logically that this action cannot be maintained, unless (as the counsel for the plaintiff has very earnestly and ably contended) one of the following propositions is true :

. I. That the town of Dane cannot be heard to object to the validity of the proceedings which it is claimed resulted in the laying out of the highway, or to deny that the land of the plaintiff has been taken for public use ; but that the plaintiff alone is entitled to make such objection, or to deny that his land was lawfully taken.

II. That, by appearing before the justice by its chairman of the board of supervisors, when the jury was selected, participating in such selection, and failing then to object that the order of March 13, 1869, was void, the town waived the objection, and is estopped from now asserting the invalidity of such order.

The argument in support of the first of the propositions seems to be this : The taking of the plaintiff's land is the exercise by the state, through an appropriate agency, of the right of eminent domain, and the act of the board of supervisors "within the scope of their duties and powers, was the act of the state," binding the state and every constituent part of it, of which the town of Dane is one. The town is in the same position as though its own board of supervisors, having lawful authority, had laid out the highway ; and in such case, the town could not be heard to allege that the petitioners were not freeholders. Such is the argument. But it is difficult to appreciate its force. when it is remembered that the county board of supervisors did

not act " within the scope of their duties and powers," in making the order of March 13, 1869; and that the right of eminent domain has not been exercised. An exercise of that right is very different from an unsuccessful attempt to exercise it. When an attempt is made to condemn private property for public use, and fails, we confess ourselves entirely unable to find any satisfactory reason why the county or town, which would have been liable to pay therefor, had the attempt succeeded, should be estopped to deny the taking of the property.

If the town or county is thus estopped, the constitutional provision relating to this subject should read in this wise: " The property of no person shall be taken for public use without just compensation therefor; and every attempt to take private property for public use shall be deemed a taking thereof within the meaning of this section."

The learned counsel have cited three authorities in support of this proposition. These are *Higgins v. Chicago*, 18 Ill., 276; *County of Peoria v. Harvey*, id., 364; and *The Auditor v. Crise*, 20 Ark., 540. We will briefly examine those cases.

In *Higgins v. Chicago*, the common council of the city of Chicago had ordered a street to be extended through the lands of the plaintiff, and appointed commissioners to assess the damages, who performed that duty and reported their assessment to the council; and the council thereupon accepted and *confirmed* such report; issued a warrant for the collection of the amounts assessed to pay such damages; and ordered the street to be opened. On application for a *mandamus* to compel the city to proceed to collect and pay over the same, it was held that the city was bound by its own confirmation, and could not be heard to allege any supposed irregularities in the proceedings, as a reason why the *mandamus* should not issue.

*Peoria County v. Harvey*, was an appeal from an assessment of damages to plaintiff's land, caused by laying out a state road across such land, pursuant to a special act of the legislature. The proceedings were resisted, on the supposition that a pro-

vision of the revised statutes, which conferred certain powers and discretion upon the county authorities in respect to highways, was applicable to such state road. The court held that this provision of the revised statutes was not applicable; that the special act established the road as soon as it was located and reported by the commissioners charged with that duty; and that nothing thereafter remained for the county to do but to pay the damages and open the road.

In both of these cases it satisfactorily appears that the right of eminent domain was lawfully exercised, and that the property of the claimants had been actually taken for public use.

The case of *Auditor v. Crise*, simply holds that, where the land of Crise had been taken by the state for levee purposes, and an inquest of damages taken before a sheriff's jury, and such inquest showed on its face that Crise was the owner of the land, such proceedings amount to an adjudication of the question of ownership, and cannot be impeached by the state in a collateral proceeding. Hence it was held that the auditor could not go back of that adjudication when the court was asked to compel him to pay Crise his damages, and defeat the application by showing that Crise was not the owner of the land. See also *Crise v. The Auditor*, 17 Ark., 572. This decision is an application of the very familiar rule that the judgment of a court of competent jurisdiction, when the same comes in question collaterally, as to all matters adjudicated in the action, is binding upon parties and privies and cannot be impeached by them.

These cases do not sustain the proposition under consideration.

III. We pass to the second proposition. The question raised by it is, whether the town is estopped to allege the invalidity of the order of' March 13, 1869, by reason of its failure to take the objection thereto before the justice, when the jurors to appraise the plaintiff's damages were selected?

Two elements are involved in the jurisdiction of all judicial or *quasi* judicial tribunals. These are, first, jurisdiction of the

subject matter of the action or proceeding; and, second, juris-diction of the parties thereto. The rules of law relating to these elements respectively are essentially different. If the tribunal has not jurisdiction of the subject matter, its proceedings are absolutely void in the broadest sense of the term. As a general rule, no act or consent of the parties can, in such a case, confer jurisdiction. The want of jurisdiction over the parties to the action or proceeding also renders the proceedings void, but not perhaps in so broad a sense. A party may do or omit to do many acts which will operate to give the tribunal jurisdiction of his person. If he appears before the tribunal wherein the action or proceeding is pending, and submits his case to its judgment, or if he fails, at the earliest opportunity, or within reasonable time, to make the objection that such tribunal has not acquired jurisdiction of his person, he thereby waives such objection, and will not afterwards be heard to make it. A very satisfactory statement and discussion of these elementary principles will be found in the opinion by BELL, J., in *The State v. Richmond*, 26 N. H. (6 Foster), 232.

The cases in the books on these subjects of jurisdiction and waiver are very numerous, many of which are cited in the brief of counsel for the plaintiff, and were read on the argument. These, and many other cases belonging to the same class, have been carefully examined, and it is believed that they all recognize and seek to apply the principle above stated.

In this case, it is clear that the board of supervisors had no jurisdiction of the subject matter of the proceedings. Such subject matter was the laying out of a highway on and near the line between the towns of Dane and Vienna. Without the petition of fifteen resident freeholders from each of those towns asking it so to do, the board had no power to lay out the high-way. Without such petition it had no jurisdiction of the matter. We have seen that no such petition was ever presented to the board. There was therefore an entire want of jurisdiction by the board of the subject matter of the proceedings.

Upon general principles it is quite doubtful whether the town could, by doing or omitting any act, give validity to the order of March 13th, 1869, or estop the town from denying the validity thereof. We do not decide this point, however, but concede, for the purposes of this case, that the town could, by its acts or omissions, accomplish either or both of these results.

This brings us to consider whether the appearance of the town of Dane, by its authorized officer, before the justice, the participation of such officer in selecting the jury, and his failure to object, then and there, that the county board of supervisors had no jurisdiction to lay out the alleged highway, operate as a waiver of such objection and estop the town from afterwards asserting it.

The proceedings relating to this alleged highway, were had before two separate and distinct tribunals. One of these was the county board of supervisors, which assumed to lay out the highway and assess the plaintiff's damages in the first instance. The other was the justice, by whom the jury was empanelled and sworn to make the final assessment of such damages. The justice had no power to decide objections to the validity of the proceedings of the board of supervisors. The order of that board, regular on its face, purporting to lay out the highway, was before him, and was to him conclusive evidence that the same had been legally laid out. He could not enquire whether there was some latent defect in the preliminary proceedings, which deprived the board of jurisdiction to make the order. All that he could lawfully do in the premises, was to empanel and swear the jury to assess and appraise the plaintiff's damages.

The appearance of the town, by an authorized officer thereof, before the justice, such participation in selecting the jury, and the omission to take any objection to the proceeding, are, doubtless, a waiver of all irregularities in the proceeding before that tribunal. For example, any defect in the notice to the town of the selection of the jury, or an entire want of any such notice; any irregularity in selecting the jury; or the want of

legal qualification by any juror so selected—was waived by the town, and the town could not be heard in this action to allege any such irregularity as a defense. But, upon what principle can it be successfully claimed that such appearance, acts and omissions, by the town, were also a waiver of the right to object that another tribunal, over which the justice had no control and the proceedings of which he could not review, had no jurisdiction of the subject matter of its proceedings. It would have been idle to make that objection before the justice. It might as well be made at a school district meeting or in church, so far as its legal effect is concerned. The most stringent rule on the subject of waiver only requires the objection to be made at the earliest opportunity ; and, for the reasons stated, the town had no opportunity to make the objection before the justice. In a legal sense, the objection could only be made before a tribunal having power to decide it; and we have seen that the justice had no such power.

It follows from these views that the town is not estopped, and that it may, in this action, be permitted to allege that the order of March 13th, 1869, is void, and that the property of the plaintiff for which he seeks compensation has never been taken for public use, and consequently that the town is not liable to pay therefor. *Hinckley et al. Petitioners, &c.*, 15 Pick., 447. It appearing that such allegations are true, it necessarily follows that there must be a new trial.

It is unnecessary to pass upon the legal effect of the order made *pendente lite* by the board of supervisors of Dane county, vacating and discontinuing the alleged highway, and vacating and reversing the order of March 13th, 1869 ; or upon certain other questions discussed in the arguments of counsel.

*By the Court.*—The judgment of the circuit court is reversed, and a *venire de novo* awarded.